UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, <br><br>             Plaintiff, <br><br>       v. <br><br> FERNANDO MOTTA MORAES, <br><br>             Defendant. | No. 22-cv-8343 (RA) <br><br> OPINION & ORDER |

RONNIE ABRAMS, United States District Judge:

In its normal practice of settling enforcement actions, the SEC routinely demands that defendants sacrifice the ability to ever deny the allegations against them—indefinitely silencing them from speech otherwise protected by the First Amendment. The threat held over the head of defendants by this so-called "No-Admit-No-Deny Provision" (the "Provision") is not easily overstated. Should they ever publicly refute the accusations against them, or even so much as "create the impression" that the SEC got something wrong, the Commission may reopen their cases or seek to hold them in contempt, thereby subjecting them to the risk of enormous financial and professional penalties, if not imprisonment. Truth is no defense. No matter how weak, or strong, the allegations in the complaint may be—indeed, even if the testimony of key witnesses proves to be false—if defendants ever consider publicly defending themselves, the No-Admit-No-Deny Provision prevents them from doing so.

Unsurprisingly, then, the non-negotiable inclusion of the Provision in consent decrees by an arm of the federal government is as rare as it is severe. Of all the federal agencies that broker settlements, the SEC stands nearly alone in its requirement, as a matter of agency policy, that defendants agree to the Provision in order for an enforcement action to be dismissed. And because

nearly every one of the hundreds of cases brought by the SEC each year is settled, the Commission relies on the Provision with alarming frequency.

Perhaps most concerning, the federal judiciary is made complicit in this practice—normalizing lifetime gag orders in the process. Courts are called upon to turn a blind eye to First Amendment rights being used as a bargaining chip; to endorse consent decrees, giving No-Admit-No-Deny Provisions the imprimatur of judicial sanction; and to enforce them should defendants ever step out of line. This is troubling indeed. "There is no greater safety valve for discontent and cynicism about the affairs of Government than freedom of expression." *U.S. v. New York Times Co.*, 328 F. Supp. 324, 331 (S.D.N.Y. 1971), *rev'd,* 444 F.2d 544 (2d Cir. 1971), *rev'd*, 403 U.S. 713 (1971) (per curiam). This "has been the genius of our institutions throughout our history," and it is "one of the marked traits of our national life that distinguish us from other nations under different forms of government." *Id*.

Before the Court is one such Consent Agreement containing the Provision, which Defendant has willingly signed. Consistent with Second Circuit precedent, *see SEC v. Romeril*, 15 F.4th 166 (2d Cir. 2021), the Court will approve the Agreement, but it will not do so silently.

**BACKGROUND**

The SEC officially began requiring the inclusion of No-Admit-No-Deny Provisions in consent decrees used to settle enforcement actions in 1972.[1] The policy was codified among the Commission's "Informal and Other Procedures," and provides:

> The Commission has adopted the policy that in any civil lawsuit brought by it or in any administrative proceeding of an accusatory nature pending before it, it is important to avoid creating, or permitting to be created, an impression that a decree is being entered or a sanction imposed, when the conduct alleged did not, in fact, occur. Accordingly, it hereby announces its policy not to permit a defendant or respondent to consent to a judgment or order that imposes a sanction while denying

---

[1] *See* Consent Decrees in Judicial or Administrative Proceedings, Securities Act Release No. 33-5337, 37 Fed. Reg. 25224-01 (Nov. 29, 1972).

the allegations in the complaint or order for proceedings. In this regard, the Commission believes that a refusal to admit the allegations is equivalent to a denial, unless the defendant or respondent states that he neither admits nor denies the allegations.

17 C.F.R. § 202.5(e); *see also id.* § 202.1(c).[2] In short, the Commission's stated rationale for the policy was to avoid the public impression that it was settling cases when there had been no violation of the law. *See SEC v. Vitesse Semiconductor Corp.*, 771 F. Supp. 2d 304, 308–10 (S.D.N.Y. 2010) (describing the origins of the Provision). In its typical form, as here, the Provision reads:

> As part of Defendant's agreement to comply with the terms of Section 202.5(e), Defendant: (i) will not take any action or make or permit to be made any public statement denying, directly or indirectly, any allegation in the complaint or creating the impression that the complaint is without factual basis; (ii) will not make or permit to be made any public statement to the effect that Defendant does not admit the allegations of the complaint, or that this Consent contains no admission of the allegations, without also stating that Defendant does not deny the allegations.
>
> * * *
>
> If Defendant breaches this agreement, the Commission may petition the Court to vacate the Final Judgment and restore this action to its active docket.

Consent Agmt. ¶ 11. Put more simply, it effectively says: "[i]f you want to settle . . . 'Hold your tongue, and don't say anything truthful—ever'—or get bankrupted by having to continue litigating with the SEC." *SEC v. Novinger*, 40 F.4th 297, 308 (5th Cir. 2022) (Jones, J., concurring).

Among federal agencies, the SEC virtually stands alone—seemingly alongside only the Commodity Futures Trading Commission (CFTC)—in its compulsory use of such a provision as a condition of settlement,[3] and its reliance upon it to dispose of enforcement actions is

---

[2] A petition to review and revoke the policy pursuant to the APA, 5 U.S.C. § 553(e) has been filed. *See* New Civil Liberties Alliance, Petition to Amend (Oct. 30, 2018), available at https://www.sec.gov/rules/petitions/2018/petn4-733.pdf. As of the date of this opinion, the SEC has not responded to the petition.

[3] *See* Oral Argument at 14:25, *SEC v. Allaire, Romeril, et al.*, No. 19-4197 (2d Cir. 2021), available at https://www.ca2.uscourts.gov/oral_arguments.html. Although the Department of Justice utilizes language precluding

breathtaking.  In the last fiscal year, the SEC brought more than four hundred enforcement actions;

between fiscal years 2014 and 2016, that annual number was nearly a thousand.[4]  In a typical year,

some 98 percent of such actions settle.[5]  Courts are then asked to sign-off on the consent decrees,

and to later enforce them if necessary, which could even involve imprisoning defendants.  *See*

*Cato Inst. v. SEC*, 4 F.4th 91, 95 (D.C. Cir. 2021).  "The result," as a colleague in this district

colorfully observed, "is a stew of confusion and hypocrisy unworthy of such a proud agency as

the S.E.C."  *Vitesse Semiconductor*, 771 F. Supp. 2d at 309.

## DISCUSSION

"A court evaluating a proposed S.E.C. consent decree for fairness and reasonableness

should, at a minimum, assess the basic legality of the decree."  *SEC v. Citigroup Global Markets,*

*Inc.*, 752 F.3d 285, 294 (2d Cir. 2014).

The Second Circuit recently addressed the use of the No-Admit-No-Deny Provision in *SEC*

*v. Romeril*, 15 F.4th 166 (2d Cir. 2021), *cert. denied*, 142 S. Ct. 2836 (2022).[6]  The *Romeril* panel

concluded that the defendant's Rule 60(b)(4) motion to set aside a sixteen-year-old judgment was

properly denied because he had "failed to show either a jurisdictional error or a due process

---

corporate defendants from later contesting the factual allegations against them (or those set out in an agreed-upon "statement of facts") when settling criminal actions, *see, e.g.,* Deferred Prosecution Agmt., *United States v. Industrial Bank of Korea*, No. 1:20-cr-257 (S.D.N.Y. April 27, 2020), available at https://www.justice.gov/usao-sdny/press-release/file/1270016/download, such provisions are not used against individual defendants.

[4]      *See* David Rosenfeld, *Admissions in SEC Enforcement Cases: The Revolution that Wasn't*, 103 Iowa L. Rev. 113, 127–28 (2017) (detailing that the SEC brought 868 enforcement actions against 1,700 defendants and respondents in FY 2016); SEC Announces Enforcement Results for FY 2021, Release No. 2021-238, (Nov. 18, 2021), available at https://www.sec.gov/news/press-release/2021-238.

[5]      *See* Luis A. Aguilar, Commissioner, U.S. Sec. & Exch. Comm'n., Remarks Before the 20th Annual Securities and regulatory Enforcement Seminar (Oct. 25, 2013), https://www.sec.gov/news/speech/2013-spch102513laav ("While going to trial is always an option, it remains infrequent at the SEC.  The SEC currently settles approximately 98% of its Enforcement cases.").

[6]      In the interest of full transparency, the Court notes that Romeril was represented on his petition for certiorari by Floyd Abrams, my father.  Rare though it may be, occasionally we must acknowledge when our parents happen to get it right.

violation within the meaning of the rule." *Id*. at 171. The panel reasoned that consent decrees are "compromises in which the parties give up something they might have won in litigation." *Id* at 172. "In the course of resolving legal proceedings, parties can . . . waive their rights, including such basic rights as the right to trial and the right to confront witnesses." *Id*. So, too, it stated, "parties can waive their First Amendment rights in consent decrees and other settlements of judicial proceedings." *Id*.[7]

But the fact that defendants may waive their First Amendment rights does not mean that the government should be in the business of demanding that they do so. Such a practice is at least in tension with the unconstitutional conditions doctrine, which "vindicates the Constitution's enumerated rights by preventing the government" from wielding its authority to manipulate incentives to "coerc[e] people into giving them up." *Koontz v. St. Johns River Water Mgmt. Dist.*, 570 U.S. 595, 604 (2013). And, at a minimum, for the reasons described below, the Court is concerned that the SEC's use of the Provision is inconsistent with the spirit of the First Amendment and our Nation's time-honored tradition of protecting free expression.

\* \* \*

First, even if an individual may waive First Amendment rights, *see Romeril*, 15 F.4th at 172, the SEC's use of the Provision as a condition precedent to settle enforcement actions raises the specter of violating the unconstitutional conditions doctrine.

The government may not "condition[]" the "conferral of a benefit . . . on the surrender of a constitutional right." *44 Liquormart, Inc. v. R.I.*, 517 U.S. 484, 513 (1996). This is so even where the "government is under no obligation to provide a person . . . a particular benefit." *Id*.

---

[7]     At least one other court in this district has relied on this language in *Romeril* to reject a defendant's effort to terminate a previously executed consent decree. *See SEC v. Musk*, No. 18-cv-8865 (LJL), 2022 WL 1239252, at \*8 (S.D.N.Y. April 27, 2022).

The Supreme Court has thus held, for instance, that the First Amendment prohibits the government from conditioning the funding of legal services on an agreement to refrain from raising certain arguments. *See Legal Servs. Corp. v. Velazquez*, 531 U.S. 533, 546–49 (2001). It has further held that the government cannot condition the renewal of an employment contract on an agreement to refrain from criticizing the government. *See Perry v. Sindermann*, 408 U.S. 593, 598 (1972). Indeed, the unconstitutional conditions doctrine specifically bars the government from selectively withholding benefits in an attempt, as here, to suppress "ideas thought inimical to the Government's own interest." *Velazquez,* 531 U.S. at 549.

It is therefore unsurprising that a growing chorus of circuits have concluded that the Constitution prevents courts from enforcing the waiver of First Amendment rights as a condition of settlements. *See, e.g., Overbey v. Mayor of Balt.*, 930 F.3d 215, 219 (4th Cir. 2019) (invalidating waiver of First Amendment rights demanded by the city as a condition of settling a police brutality action); *U.S. v. Richards*, 385 F. App'x 691, 693 (9th Cir. 2010) (rejecting a term in a plea agreement which would have precluded the defendant from making public comments about a county official); *G&V Lounge, Inc. v. Mich. Liquor Control Comm'n*, 23 F.3d 1071, 1077 (6th Cir. 1994) (finding a contract unenforceable where "receipt of a benefit" was "condition[ed]" upon waiver of the "right to free expression, contrary to the principles set forth in *Perry*"). Critically, these decisions have underscored that enforcement of such conditions is unconstitutional even when knowingly and voluntarily consented to by the parties.

Second, the No-Admit-No-Deny Provision has all the hallmarks of a prior restraint on speech, which the Supreme Court has characterized as "the most serious and the least tolerable infringement on First Amendment Rights." *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 559 (1976). As Judge Jones of the Fifth Circuit aptly observed when reviewing the Provision, "[a]

more effective prior restraint is hard to imagine." *Novinger*, 40 F.4th at 308 (Jones, J., concurring).

As originally conceived, the First Amendment provided "principally although not exclusively, immunity from previous restraints or censorship." *Near v. Minnesota*, 283 U.S. 697, 716 (1931). Indeed, the primary reason that the Amendment was adopted by the Framers was to provide protections against prior restraints on speech. *See Paterson v. Colo. ex. rel. Att'y Gen.*, 205 U.S. 454, 462 (1907) ("[T]he main purpose of [the First Amendment] is to prevent all such *previous restraints* upon publications as had been practised by other governments.") (emphasis and spelling in original). "Any prior restraint on expression," therefore, comes "with a 'heavy presumption' against its constitutional validity." *Org. for a Better Austin v. Keefe*, 402 U.S. 415, 419 (1971).

By preventing defendants from publicly defending themselves, or even criticizing the SEC's handling of the case (thereby "creating the impression" that the Commission sanctioned them without basis), the Provision denies the public the opportunity to scrutinize the government's enforcement practices. Indeed, the very people who are arguably "in the best position to know" of governmental abuse, *Bd. of Cnty. Comm'rs v. Umbehr*, 518 U.S. 668, 674 (1996)—that is, those who have been subjected to the SEC's enforcement actions—are those who are muzzled by the Provision from speaking out. "Only one thing is left certain: the public will never know whether the S.E.C.'s charges are true." *Vitesse Semiconductor*, 771 F. Supp. 2d at 309. While this "might be defensible if all that were involved was a private dispute between private parties," *id.*, here, the Provision is used by an agency of the federal government to shield itself from public view. This may inflict precisely the kind of societal harm the Founders adopted the First Amendment to protect against:

> The dominant purpose of the First Amendment was to prohibit the widespread practice of governmental suppression of embarrassing information . . . . Secrecy in

> government is fundamentally anti-democratic, perpetuating bureaucratic errors. Open debate and discussion of public issues are vital to our national health.

*New York Times Co. v. U.S.*, 403 U.S. 713, 723–24 (1971) (Douglas, J., concurring); *see also id.* at 717 (Black, J., concurring) ("The Government's power to censor the press was abolished so that the press would remain forever free to censure the Government . . . so that it could bare the secrets of government and inform the people."). And although consent decrees are "compromises in which the parties give up something that they might have won in litigation," *Romeril*, 15 F.4th at 172, there is no dispute that the SEC would not be entitled to the imposition of a lifetime gag order if it were to proceed to trial, whether or not it prevailed.

Third, the Provision is a textbook content- or viewpoint-based prohibition on speech. *See In re Murphy-Brown, LLC*, 907 F.3d 788, 796–97 (4th Cir. 2018) ("[G]ag orders warrant a most rigorous form of review because they rest at the intersection of disfavored forms of expressive limitations: prior restraints and content-based restrictions.").

On its face, the Provision "target[s] speech based on its communicative content." *Nat'l Ins. of Fam. & Life Advoc. v. Becerra*, 138 S. Ct. 2361, 2371 (2018). Although a defendant cannot "create the impression" that he is "denying the allegations in the complaint," 17 C.F.R. § 202.5(e), he is perfectly free to praise the SEC for its enforcement tactics, for instance, or to confess his culpability in violating the securities laws. The Provision thus cannot be "justified without reference to the content of the regulated speech." *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989). And "[c]ontent-based laws—those that target speech based on its communicative content—are presumptively unconstitutional and may be justified only if the government proves that they are narrowly tailored to serve compelling state interests." *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015).

The Court gave the SEC the opportunity to justify why its use of the Provision is necessary.

*See* Dkt. 8. In response, the Commission asserted that the Provision was needed to "avoid misleading impressions" that could result if a defendant were to "settle one day without admissions and publicly deny the allegations the next." Dkt. 9 at 3. The Court is unconvinced that this amounts to a compelling governmental interest. *Cf. Republican Party of Minn. v. White,* 536 U.S. 765, 766 (2002) (finding that government preserving the appearance of "impartiality" is "not a compelling state interest").

The upshot: so long as a defendant says what the SEC wants to hear (or says nothing at all), he does not violate the No-Admit-No-Deny Provision. This is quintessential viewpoint discrimination. And the government should have "no such authority to license one side of a debate." *R.A.V. v. City of St. Paul, Minn.*, 505 U.S. 377, 392 (1992).

## CONCLUSION

What is the SEC so afraid of? Any criticism, apparently—or, rather, anything that may even "create the impression" of criticism—of that governmental agency.

Accordingly, while the Court will approve the Consent Agreement at the request of the parties, consistent with *Romeril*, 15 F.4th at 172, it does so with reluctance in light of the SEC's continued and misguided practice of restraining speech. After all, speech "is the means to hold officials accountable to the people," *Citizens United v. FEC*, 558 U.S. 310, 339 (2010), and is "essential to effective democracy," *Whitney v. Cal.*, 274 U.S. 357, 377 (1927) (Brandeis, J., concurring).

SO ORDERED.

Dated:     October 28, 2022
           New York, New York

                                                    Hon. Ronnie Abrams
                                                    United States District Judge